FILED
04/30/2019
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 16, 2019

**STEVEN TYLER NABI v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Robertson County**
**Nos. 2013-CR-630, 2013-CR-635      William R. Goodman, III, Judge**

_____

**No. M2018-01449-CCA-R3-PC**

_____

Following a reversal and remand of this case for the post-conviction court to make appropriate findings of fact and conclusions of law, Steven Tyler Nabi v. State, M2017-00041-CCA-R3-PC, 2018 WL 1721869, at *5-6 (Tenn. Crim. App. Apr. 9, 2018), the post-conviction court denied relief a second time. On appeal, the Petitioner, Steven Tyler Nabi, argues that his guilty pleas were not knowing, intelligent, or voluntary. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

William F. Kroeger, Springfield, Tennessee, for the Petitioner, Steven Tyler Nabi.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Jason C. White, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background.** The Petitioner was indicted in case number 2013-CR-635 for one count of aggravated robbery, one count of conspiracy to commit aggravated robbery, and one count of aggravated assault, all of which were alleged to have occurred on August 16, 2013. The Petitioner was also indicted in case number 2013-CR-630 for one count of aggravated robbery that was alleged to have occurred on August 19, 2013. The State then filed a notice of its intent to seek enhanced punishment in both cases.

**Trial.** On February 3, 2014, the Petitioner's trial began in case number 2013-CR-635. At a pretrial hearing, the State informed the trial court that it was dismissing the

conspiracy to commit aggravated robbery count and was proceeding on the aggravated robbery and aggravated assault counts. Thereafter, at trial, the State presented testimony from the victim, Brandon Moss, as well as testimony from Jessica Brown, Officer Littlejohn, and Kevin Williams.

The victim testified that he was staying with his father in White House, Tennessee, when he met a woman, Kaygen Bailey,[1] online. Thereafter, Bailey invited the victim to meet her at the Deerfield Inn in Greenbrier, Tennessee, and the victim acknowledged that he was "looking to have sex" with Bailey. On August 16, 2013, the victim was waiting outside this motel when Bailey arrived in a white Ford Explorer driven by another woman. The victim greeted Bailey, and when he reached inside his vehicle for some beer, he was suddenly hit in the back of the head with a large object. The victim quickly backed up and saw the Petitioner, who pointed a large, silver revolver at him and told him to hand over his wallet or he would kill him. The victim, who feared for his life, immediately gave the Petitioner his wallet, which contained his identification, credit cards, debit cards, and approximately $20 in cash. Once the Petitioner received the victim's wallet, the Petitioner and Bailey ran off together toward the back of the motel. The victim, who was bleeding profusely and in shock, did not go to the police station because he was unfamiliar with the area; instead, he drove back to his father's home. Once there, the victim's father immediately took him to the hospital, where the police were called. Although the victim admitted that he initially lied to police about how he met Bailey because he was embarrassed about meeting her online, he said that shortly thereafter he told the police the truth about how they met.

The victim said that a couple of days after the incident, he went online to try to find information about Bailey. He found a woman with Bailey's phone number named Kristen Geracia. Thereafter, he found photographs of Kaygen Geracia, the woman he met the night of his assault, and photographs of the Petitioner, who was identified online as Steven Tyler Nabi. Based on this information, officers later arrested the Petitioner. A few days after the incident, the police contacted the victim to identify a wallet that had been found in the area, and the victim confirmed that the wallet belonged to him. The victim said this wallet had all of its previous contents except for his cash.

Jessica Brown testified that on the night of August 16, 2013, she drove Bailey and the Petitioner in her white Ford Explorer to the Deerfield Inn so that they could "get money." She said Bailey sat in the front passenger seat, and the Petitioner sat in the backseat, which had tinted windows. When they arrived at the motel, Bailey and the Petitioner got out and walked around the corner. A few minutes later, Bailey and the

---

[1] The record shows that Kaygen Bailey also used the name "Kaygen Geracia." However, for the purpose of clarity, we will refer to her as Kaygen Bailey throughout this opinion.

- 2 -

Petitioner returned, and Brown drove them back to the home she shared with Kevin Williams, her boyfriend. Brown admitted that on August 19, 2013, she provided a statement to the police, wherein she said she drove Bailey and the Petitioner "to the Deerfield Inn in Greenbrier, where [Bailey] was meeting a trick and said she was going to get in the car and get his money and leave."

Officer Jason Littlejohn of the Greenbrier Police Department testified that a few days after this incident he arrested Bailey and questioned Brown based on the information the victim had provided. Brown later gave permission for Officer Littlejohn to search her house, and during this search, he found a silver revolver, belonging to Kevin Williams, in the attic crawl space. Officer Littlejohn collected this gun as evidence but acknowledged that no DNA testing had been done on the revolver. He also said that although he dusted the gun for fingerprints, he was unable to find any prints to collect. Officer Littlejohn stated that Williams was African American and that the victim had said he was assaulted by a man who was either Caucasian or of Spanish descent.

Kevin Williams, Brown's boyfriend, testified that he owned a "gray" revolver that he kept under his mattress. He said that the Petitioner had seen this gun and knew where he kept it. Williams said that when Brown, Bailey, and the Petitioner returned to his home on August 16, 2013, the Petitioner told him that he had "pistol-whipped" a man at the Deerfield Inn with Williams' gun. Williams asserted that he had never given the Petitioner permission to take his gun, and when he attempted to locate it, he discovered that the gun was in a different place under his mattress. Williams acknowledged that his criminal history included prior felony convictions for attempted murder, aggravated robbery, and aggravated assault. He admitted that he was not supposed to have a gun as a convicted felon but asserted that the testimony he had just provided was the truth. Williams also admitted that he had not been charged with unlawful possession of a firearm in this case.

Following Williams' testimony, the jury was excused. Thereafter, the prosecutor informed the trial court that he was going to rest his case because he had decided not to call Bailey to testify, and trial counsel immediately announced his intent to call Bailey to testify for the defense. Trial counsel said that Bailey had previously given a statement to police, wherein she asserted that the victim had contacted her about purchasing sex, that the plan was for her to get the victim's money and run, and that as she was exiting the victim's car with his money, the Petitioner walked up, pointed a gun at the victim, and hit the victim in the face with the gun. Trial counsel said Bailey's statement supported the defense theory that the theft had been accomplished prior to the assault, which precluded a finding that the Petitioner was guilty of aggravated robbery. In response, the prosecutor asserted that Bailey's charges for aggravated robbery and conspiracy to commit aggravated robbery were still pending, and the trial court informed Bailey, in her

attorney's presence, that she had the right to remain silent. The court noted that trial counsel's intended questions would require Bailey to incriminate herself, and Bailey's attorney stated that Bailey would testify as to the truth of what happened, although he had already advised her that she had the right, at any time, to plead the Fifth Amendment.

The prosecutor then said that Bailey had recently given him a proffer, wherein she stated that the Petitioner hit the victim in the head with a gun before robbing him. Trial counsel complained about not being told about Bailey's proffer, which took "her usefulness off the board," and then said he was "not going to give [Bailey] a chance to cut [his] legs out from under [him]." The prosecutor replied that trial counsel had been made aware that Bailey was going to testify for the State and that she was represented by counsel. The prosecutor asserted that if Bailey testified differently from her proffer, then he would cross-examine her about the fact that she had told the State she witnessed an aggravated robbery. The trial court said that in light of Bailey's proffer, it was going to give trial counsel overnight to think about how he wanted to proceed.

**Guilty Plea.** On February 4, 2014, prior to trial resuming, trial counsel informed the court that the Petitioner had entered a plea agreement, wherein he would plead guilty to one count of aggravated robbery in case number 2013-CR-635 and to one count of aggravated robbery and in case number 2013-CR-630 in exchange for two concurrent twelve-year sentences "at seventy percent service," so long as the court was willing to accept the guilty pleas. As a part of the Petitioner's plea agreement, the aggravated assault count in case number 2013-CR-635 was dismissed.

Upon hearing this, the trial court referenced Tennessee Code Annotated section 40-35-501(k)(1), stating:

> [T]here shall be no release eligibility for a person committing aggravated robbery on or after July 1, 2010[,] until the person has served eighty-five percent of the sentence imposed by the Court, less sentence credits earned and retained. However, no sentence reduction credit or any other provision of law shall operate to reduce below seventy percent, the percentage of the sentence imposed by the Court[] such person must serve before becoming release eligible.

The trial court then remarked, "It's my understanding . . . that he's got to serve at least seventy percent of twelve calendar years . . . before he would be subject to even be considered?," and trial counsel replied, "Yes." The trial court asked the Petitioner if he understood what he had just said about his release eligibility, and the Petitioner responded, "Yeah." The court stated that it was going to advise the Petitioner of his rights and if it found that the Petitioner had not really agreed to this plea agreement, then

- 4 -

it was not going to accept it. The court then explained, "[I]t is my job in this type of situation to determine whether you are voluntarily and intelligently giving up rights upon entering these pleas." When the court asked the Petitioner if he understood the things he had just told him, the Petitioner replied, "Yes, sir." The court summarized the facts associated with the Petitioner's aggravated robbery charge in case number 2013-CR-630 involving victims Cory McClure and Harold McClure, and then asked the Petitioner if he understood the charges against him in case 2013-CR-635 involving victim Brandon Moss, for which he had initially proceeded to trial, and the Petitioner replied that he understood these charges.

The trial court then informed the Petitioner that he had a right to a jury trial, to present evidence, to subpoena witnesses, to confront the State's witnesses, to testify in his own behalf, and to remain silent. The court explained that the State would have the burden of proving the Petitioner's guilt of the charged offenses beyond a reasonable doubt and that if he chose to remain silent at trial, his silence could not be used against him. In addition, the court made it clear that the Petitioner would be entering a guilty plea to aggravated robbery in the case involving the McClure victims as well as to aggravated robbery in the case involving victim Moss. The Petitioner stated that he believed it was in his best interests to enter his guilty pleas. When the trial court asked the Petitioner if he understood that no one could "force [him] to enter these pleas of guilty," the Petitioner replied, "Yeah." The trial court then stated:

> [A]s you well know, the more felony convictions you have the much more serious the punishment becomes and this would be two more felony convictions. If you are convicted of anything in the future, these convictions as well as all convictions will be used to greatly increase punishment; do you understand that?

The Petitioner then responded, "Yeah." The court also told the Petitioner that both of these cases would be final that day and that he would be giving up the right to appeal, and the Petitioner stated that he understood he was waiving this right. The court asked the Petitioner if he had any questions, and the Petitioner said, "No." The Petitioner then asked the court to accept his guilty pleas. The Petitioner stated that he was guilty of the aggravated robbery at the Greenbrier Inn in case number 2013-CR-635, and the trial court accepted his guilty plea and sentenced him to "twelve years as a range two offender," which meant that the Petitioner had to serve a "minimum of seventy percent calendar days of twelve years." The court acknowledged that the remaining counts in case number 2013-CR-635 were dismissed. The Petitioner also admitted he was guilty of the aggravated robbery in 2013-CR-630 because he used a deadly weapon to take property from Cory McClure and Harold McClure. The court accepted the Petitioner's guilty plea

to this offense and sentenced him to "twelve years as a range two offender" and noted that this sentence would be served concurrently with case number 2013-CR-635.

**Post-Conviction Hearing.** On August 17, 2014, the Petitioner drafted and forwarded a letter, which the trial court treated as a pro se petition for post-conviction relief. Following the appointment of counsel, the Petitioner filed an amended post-conviction petition, and the State filed its response.

At the November 23, 2016 post-conviction hearing, the Petitioner testified that he was under the influence of marijuana the day that he entered his guilty pleas. He said he smoked "three or four grams" of marijuana at the county jail the morning of his plea submission hearing, which prevented him from understanding the proceedings. The Petitioner claimed he bought the marijuana from an inmate in his pod at the jail, but he refused to disclose the name of this inmate.

The Petitioner also said the transcript from the plea submission hearing showed that the trial court did not comply with Rule 11 because it failed to ask or inform him of the following things: (1) the maximum penalty for the charged offenses; (2) whether his plea was voluntary; (3) whether there were any threats or promises made to him; and (4) whether he was under the influence of any drugs at the time he entered these guilty pleas. The Petitioner also asserted that the trial court violated State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), by failing to inform him that evidence of the convictions from his guilty pleas could be presented in determining the appropriate punishment for future convictions.

The Petitioner also asserted that he was forced to agree to the plea agreement because trial counsel failed to properly cross-examine the State's witnesses to show that they were not credible. He claimed that all of the State's witnesses changed their stories in an attempt to keep themselves "out of trouble." In particular, the Petitioner said that although the victim testified at trial that he had met Bailey on a dating website, the victim had actually met Bailey on backpage.com, where he set up a meeting to pay for sex. When the Petitioner brought up the issue about the victim's lying about the website, trial counsel replied that he did not believe "it was going to make that big of a difference." The Petitioner also asserted that the victim lied when he said the Petitioner hit him with a gun and took his wallet. He claimed that the victim did not want to admit that he was there to pay Bailey for sex and that Bailey had given a statement to police that she took the victim's money and began to walk off before the Petitioner hit the victim. The Petitioner asserted, "I may have been guilty of an assault, but . . . I never robbed [the victim]." He also claimed that the victim's written statement to police varied from the victim's testimony at trial. The Petitioner asserted that if trial counsel had adequately cross-examined the victim on these issues, the jury would not have found the victim

credible and would have convicted him of assault rather than aggravated robbery. The Petitioner admitted that he hit the victim; however, he claimed he punched the victim because he thought he was going to hurt Bailey, his fiancée.

In addition, the Petitioner said he wanted trial counsel to show that Kevin Williams' testimony at trial concerning the location of the gun differed from Williams' statement to police. He asserted that trial counsel should have asked that Williams' testimony be "thrown out" because it was "not credible." The Petitioner later admitted that Williams' testimony and his statement to police were consistent regarding the location of the gun. The Petitioner also claimed that Jessica Brown's testimony differed from her statement to police. He said Brown initially told police that she did not know anything about a gun but later took a detective to her house to find the gun. In addition, he said that Brown initially told officers that Bailey had needed a ride to the motel to meet an individual who was going to pay her for sex but that trial counsel never questioned Brown about this part of her statement. Moreover, the Petitioner felt that trial counsel should have questioned Detective Littlejohn about the absence of physical evidence connecting him to the aggravated robbery and about the fact that the victim's wallet had been recovered with nothing missing from it.

Additionally, the Petitioner claimed that trial counsel did not adequately prepare for trial. He said he met with trial counsel only two times prior to trial and that these visits were short, "eight, nine minutes, at the most," and that they consisted only of discussions regarding settlement offers. The Petitioner said he wrote trial counsel about the pertinent facts in his case but never received a response. The Petitioner also claimed that trial counsel told him that he was unable to prepare for his trial because he was busy with other cases.

The Petitioner stated that because he was under the influence of marijuana at the time of his plea, he did not understand that the State's offer was twelve years with a release eligibility of eighty-five percent. He noted that the offers he received prior to trial had all been for eight years at seventy percent, which he turned down. After the first day of trial, the State offered him concurrent twelve-year sentences at seventy percent but never mentioned a release eligibility of eighty-five percent. The Petitioner acknowledged that the trial court informed him at the plea submission hearing that "there would be no release eligibility for a person committing aggravated robbery on or after July 1, 2010[,] until the person has served eighty-five percent of the sentence imposed by the Court, less sentence credits earned and retained." However, the Petitioner claimed the court also said that an individual could "get it down to 70 percent," which led him to believe that "the Court gave [him] a twelve-year sentence at 70 percent." The Petitioner asserted that he did not understand at the time of his plea that his sentences had a release eligibility of eighty-five percent but that this percentage could potentially be reduced by fifteen

percent for good time credits, which would only then allow him to be eligible for parole after service of seventy percent of his sentences. The Petitioner said he was "tricked into taking a sentence at 85 percent" because he thought he was receiving a sentence of twelve years at seventy percent. Despite this claim, the Petitioner admitted that he understood, at the time he entered his plea, that he would have to serve at least seventy percent of his concurrent twelve-year sentences before being considered for parole.

The Petitioner said that the day after the State presented its case-in-chief, trial counsel told him that he believed the jury was going to find him guilty on all counts, which meant that he could receive a sentence of thirty to forty years. He said that because trial counsel "kept trying to drill it in my head that it wasn't going to get any better," he was "coerced into taking this plea." The Petitioner later acknowledged that had he been convicted of aggravated robbery at trial, he would have been sentenced as a Range II offender to a potential sentence of twelve to twenty years. He also admitted that if the State had been able to find witnesses to testify against him regarding his aggravated robbery charge in case number 2013-CR-630, then he would have faced another sentence of twelve to twenty years for that offense. The Petitioner asserted that he entered a plea to this second count of aggravated robbery, even though there were written statements indicating his innocence, because he was not in his "right mind." He claimed he was not aware that "another robbery from a separate case could be put in with that plea, even though [he] was only going to trial on . . . that one robbery." However, the Petitioner admitted that the trial court informed him at the plea submission hearing that if he entered guilty pleas, his trial on the first aggravated robbery count would not continue and he would never have a trial on his second aggravated robbery count. He also admitted that by pleading guilty, he received concurrent sentences of twelve years, which was the bottom of the sentencing range, for both aggravated robbery offenses.

The Petitioner acknowledged that after the State presented its case-in-chief but before he accepted the State's plea offer, he was made aware in a hearing out of the presence of the jury that Bailey would testify that the Petitioner committed an aggravated robbery, even though she initially told police that she took the victim's wallet. Nevertheless, the Petitioner insisted, "I know [Bailey] was going to admit to what she did and . . . clear me of an aggravated robbery."

Trial counsel also testified at the post-conviction hearing. He said that he had been employed by the public defender's office when he represented the Petitioner in this case. He said he had represented over 10,000 defendants charged with a variety of criminal offenses and had conducted approximately two hundred trials. Trial counsel said he met with the Petitioner at least two times, and they thoroughly reviewed the discovery and statements available. He noted that the State had filed a range notice in the Petitioner's case based on his criminal history. Trial counsel said that although he was

"continually swamped" as a public defender, he felt like he was prepared for the Petitioner's trial and met with the Petitioner as needed.

Trial counsel opined that in every case there are "facts beyond change" which are facts that the jury will always accept as true, and that in this case, whether the victim made the deal with Bailey on one website or another would not have made any difference because the jury was going to believe the victim's version of events. Trial counsel said that based on her proffer, Bailey would have testified that the Petitioner hit the victim with the gun and took his wallet, and any evidence that Bailey and the victim differed on regarding what happened prior to that point was "irrelevant." Trial counsel also said he advised the Petitioner about Bailey's likely testimony at trial. He asserted that the Petitioner was gambling on Bailey or another person getting on the stand and "confess[ing] themselves into a crime," which they were not going to do.

Trial counsel stated that the morning after the State presented its case at trial, the Petitioner came to him and said, "Can we settle this?" Trial counsel contacted the State and received an offer for the Petitioner to enter guilty pleas to both aggravated robbery counts in exchange for being sentenced as a Range II offender to concurrent sentences of twelve years with a release eligibility of eighty-five percent. He said that because the trial had been going in the State's favor, the Petitioner was not going to receive the earlier eight-year deal. He gave the Petitioner a copy of his plea agreement, reviewed it with the Petitioner, and explained to the Petitioner that he would be eligible for a fifteen percent reduction for good behavior, which would enable him to be eligible for parole after serving seventy percent of his sentence. Trial counsel also said he reviewed the potential sentences the Petitioner faced if convicted. He informed the Petitioner that because he was charged with two aggravated robberies, it was possible for him to be sentenced to forty years in prison if the court imposed consecutive sentencing. He also informed the Petitioner that he would probably not receive the minimum twelve-year sentence if he was convicted at trial of the aggravated robbery involving Brandon Moss because he was a Range II offender.

Trial counsel said that when he explained this offer, the Petitioner appeared to understand and ultimately agreed to accept this offer. At the time, the Petitioner did not show any signs that he was under the influence of marijuana. Trial counsel said that he did not smell marijuana on the Petitioner or his clothes and that the Petitioner's "speech and manner seemed appropriate."

Trial counsel reviewed the Petitioner's plea agreements for each charge that had been filed and testified that the handwriting on the plea agreements belonged to him. Trial counsel said that when he first wrote these agreements, he typed that the Petitioner was receiving "10 years at 70 percent" and later corrected it, writing in that the Petitioner

was receiving "12 years" at "85 [percent]." He said that although these corrections were made after the Petitioner signed the plea agreements, the Petitioner was aware of these changes before entering his pleas. Although trial counsel did not explicitly recall talking to the Petitioner about these changes, he said that it was his practice to discuss these types of changes with clients and to ask them if it changed their decision to enter the plea. Trial counsel noted that the Petitioner initialed the change from a ten-year sentence to a twelve-year sentence but acknowledged that the Petitioner had not initialed the change from seventy percent to eighty-five percent release eligibility. Nevertheless, trial counsel asserted that both he and the trial court reviewed the final plea agreement with the Petitioner before the Petitioner entered his guilty pleas.

On January 5, 2017, the post-conviction court entered a written order denying relief, and the Petitioner filed a timely notice of appeal. Thereafter, this court reversed and remanded this case for the post-conviction court to make appropriate findings of fact and conclusions of law. Steven Tyler Nabi, 2018 WL 1721869, at *5-6.

On August 1, 2018, following the remand, the post-conviction court entered a second order, again denying post-conviction relief. In it, the court incorporated the factual summary of the Petitioner's case from its original January 5, 2017 order; it then reviewed each of the grounds, made appropriate findings of fact and conclusions of law before concluding that the Petitioner was not entitled to relief. The court held that the Petitioner had failed to prove that trial counsel was deficient in his cross-examination of Brandon Moss, Kevin Williams, Jessica Brown, or Detective Littlejohn. It also held that the Petitioner had failed to show that trial counsel had not adequately discussed his case with him or that trial counsel was not properly prepared for trial. As to the Petitioner's claim that trial counsel coerced him into entering his guilty pleas by telling him that he would receive thirty years in prison if he refused to enter the plea agreements, the post-conviction court found that trial counsel had merely advised the Petitioner "as to the possible outcome at trial and [his] sentencing range" and that there was no proof in the record to support the Petitioner's claim that his guilty pleas were coerced. The court held that the Petitioner, after being properly advised, made the decision to voluntarily enter his guilty pleas. Regarding the Petitioner's claim that he was under the influence of marijuana at the time he enter his guilty plea, the court found that no proof corroborated this claim, specifically noting that the Petitioner had refused to disclose the source of this marijuana and that trial counsel testified that he did not smell marijuana on the Petitioner or the Petitioner's clothes at the time he entered his guilty pleas. Lastly, as to the Petitioner's claims that the trial court failed to conduct a proper plea colloquy, the post-conviction court recognized that "such issues were not contained in the petition or amended petition and should be deemed as having been waived." Waiver notwithstanding, the post-conviction court concluded that the Petitioner was not entitled to relief on these issues, stating:

- 10 -

[T]he record of the discussions between trial counsel and [P]etitioner reflect that [P]etitioner was fully aware of the range of punishment. The transcript of the plea reflects that full inquiry was made as to the voluntariness of the plea, and that the [P]etitioner was informed that the conviction may be considered should [P]etitioner be convicted of anything in the future. Also, the issue of the percentage of the sentence to be served prior to being eligible for consideration of parole was reviewed by the trial judge with [P]etitioner. Therefore, this court finds the plea of the [P]etitioner to have been voluntarily and knowingly entered.

On August 9, 2018, the Petitioner filed a timely notice of appeal.

## ANALYSIS

The Petitioner argues that his guilty pleas were not knowing, intelligent, and voluntary because trial counsel provided ineffective assistance, because he was under the influence of marijuana at the time he entered his plea, because the trial court failed to conduct a proper plea colloquy before accepting his guilty pleas, and because of confusion regarding the percentage of the sentence he must serve. The Petitioner, referencing the factors in Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993), also asserts that he had "very little familiarity with criminal proceedings[] and had very little opportunity to confer with counsel about the options available to him, having only discussed the plea offer from the [S]tate on the morning of the plea." The State responds that the post-conviction court properly denied the Petitioner's request for relief. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State,

303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In this case, the Petitioner contends that his guilty pleas were not knowingly, understandingly, or voluntarily entered. The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W.3d at 562. An individual may waive his constitutional rights and enter a guilty plea. Bush v. State, 428 S.W.3d 1, 9 (Tenn. 2014). However, in order to be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Lane, 316 S.W.3d at 562 (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). Waiver of these constitutional rights cannot be presumed and must be apparent from the record. Ward v. State, 315 S.W.3d 461, 465 (Tenn. 2010).

"'[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]'" State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003) (quoting Mackey, 553 S.W.2d at 340); see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted). "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). This is because "[s]olemn declarations in open court carry a strong presumption of verity[.]" Id. at 74. Because statements made in open court carry a strong presumption of truthfulness, a petitioner, in order to overcome this presumption, must present more than "conculsory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." Id.

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty

- 12 -

plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

**I.  Ineffective Assistance of Trial Counsel.**  The Petitioner asserts that "counsel's ineffective assistance caused him to enter a guilty plea that was not knowing or voluntary."  He specifically claims that trial counsel failed to adequately prepare for trial, failed to adequately cross-examine the State's witnesses at trial, and failed to properly advise him of his potential sentences if convicted at trial.

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)).  "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms."  Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936).  In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial.  Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  Counsel's ineffective assistance may affect the validity of a petitioner's guilty plea.  Hill, 474 U.S. at 56.

The Petitioner first contends that he entered an involuntary and unknowing plea because trial counsel failed to adequately prepare for trial.  At the post-conviction hearing, the Petitioner asserted that trial counsel only met with him two times prior to trial, and during these meetings, counsel only discussed plea offers and never discussed the facts of his case. He also claimed that he wrote trial counsel about the pertinent facts in his case but that he never received a response.  However, trial counsel testified that he

- 13 -

met with the Petitioner at least two times prior to trial and that he and the Petitioner thoroughly reviewed the available discovery and statements. Although trial counsel admitted that he was "continually swamped" with work as a public defender, he asserted that he met with the Petitioner as often as was necessary. Our evaluation of trial counsel's performance shows that he was fully prepared for trial. The post-conviction court, in considering this issue, found that "[t]he measure of effective representation is not measured by a specific number of visits or number of letters sent, but by the performance of counsel in giving advice and information to the client and in effective advocacy at trial." The post-conviction court then determined that the Petitioner had failed to prove this allegation by clear and convincing evidence, and we conclude that the record fully supports this finding. Because the Petitioner failed to establish that trial counsel was ineffective with regard to this claim, he has also failed to show that counsel's ineffectiveness rendered his plea involuntary and unknowing.

The Petitioner next asserts that his guilty pleas were involuntary and unknowing because trial counsel was ineffective in failing to adequately cross-examine the State's witnesses at trial, which caused him to lose confidence in counsel, and ultimately coerced him into pleading guilty. The Petitioner asserts that trial counsel should have questioned the victim about the website through which he met Bailey, his intent to purchase sex from her, and the fact that the victim gave his money to Bailey, which precluded a finding that he was guilty of aggravated robbery. He also claims that trial counsel should have questioned Kevin Williams regarding "the discrepancies [regarding] where the gun was located." Finally, he contends that trial counsel should have confronted Jessica Brown about the repeated lies she told during her testimony.

Initially, we note that the Petitioner failed to present any of these witnesses or any other proof at the post-conviction hearing to corroborate his claim that trial counsel's cross-examination of these witnesses was both deficient and prejudicial. Cf. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that whenever a petitioner argues that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at the post-conviction hearing because this is the only way the petitioner can show that this failure to discover, interview, or present these witnesses inured to his prejudice). The Petitioner's failure to present these witnesses at the post-conviction hearing weighs heavily against any finding that he was prejudiced by trial counsel's cross-examination of them.

At the post-conviction hearing, trial counsel testified that despite the Petitioner's arguments to the contrary, evidence regarding how the victim met Bailey would not have made any difference because the jury was going to believe the victim's version of the events. Trial counsel said the Petitioner was hoping one of his co-conspirators would "confess themselves into a crime, and they're not going to do that." In addition, the

Petitioner admitted that Kevin Williams' testimony and statement to police were consistent as to the location of the gun. Moreover, a review of the trial transcript shows that trial counsel did, in fact, cross-examine Jessica Brown about the fact that she had told police that Bailey had needed a ride to the motel to meet a man who wanted to pay her for sex. We note that the post-conviction court specifically rejected this claim when it found that trial counsel was not deficient in his cross-examination of these witnesses. Because the Petitioner has not shown how trial counsel's performance during cross-examination was deficient or prejudicial, he has failed to establish that trial counsel was ineffective. Consequently, the Petitioner has also failed to prove that counsel's alleged ineffectiveness during cross-examination rendered his guilty pleas unknowing, involuntary, or unintelligent.

Lastly, the Petitioner asserts that trial counsel was ineffective in informing him that if he did not plead guilty, he would receive a sentence of thirty or forty years in prison, which made him "feel compelled to take the plea offer." The Petitioner asserts that his plea was the result of trial counsel's coercion and threats. See Blankenship, 858 S.W.2d at 904. The evidence presented at the post-conviction hearing shows that trial counsel informed the Petitioner prior to the plea submission hearing that he was charged with two aggravated robberies and that it was possible for him to be sentenced to forty years if the court imposed consecutive sentencing. He also told the Petitioner that he would probably not receive the minimum sentence of twelve-years if convicted at trial of the aggravated robbery involving Brandon Moss because he was a Range II offender. When considering this issue, the post-conviction court concluded that the Petitioner was not coerced into pleading guilty because trial counsel merely advised him of "the possible outcome at trial and [his] sentencing range." Because counsel's performance with regard to this issue was neither deficient nor prejudicial, trial counsel was not ineffective. Accordingly, we conclude that the record fully supports the post-conviction court's holding that trial counsel's advice regarding his potential sentence did not result in the Petitioner's entering an involuntary or unknowing plea.

**II. Impairment from Marijuana.** The Petitioner also asserts that his guilty plea was involuntary and unknowing because he was under the influence of marijuana at the time that he entered it. He claims that because he smoked three or four grams of marijuana prior to his plea submission hearing, his plea was the result of ignorance and incomprehension. See Blankenship, 858 S.W.2d at 904.

Although the Petitioner claims he was under the influence of marijuana, the Petitioner failed to present any evidence corroborating his claim at the post-conviction hearing. Trial counsel testified that the Petitioner approached him the morning after the first day of trial and asked if he could settle the case. He said the Petitioner showed no signs that he was under the influence of marijuana when they discussed the plea

- 15 -

agreement or when the Petitioner entered his guilty plea. Trial counsel also said he did not smell marijuana on the Petitioner or his clothes and that the Petitioner's "speech and manner seemed appropriate." When the Petitioner was specifically questioned about this issue at the post-conviction hearing, he refused to disclose the source of this marijuana.

The transcript of the plea submission hearing shows that the trial court informed the Petitioner of his rights and conducted a thorough review of the plea agreement. The Petitioner's responses were at all times appropriate, and the transcript contains no indication that the Petitioner was under the influence of marijuana, or any other substance, at the time of his plea. During this hearing, the Petitioner said that he was entering his guilty pleas voluntarily because they were in his best interest and that he had no questions about his pleas. When considering this issue, the post-conviction court found that no proof corroborated the Petitioner's claim that he was under the influence of marijuana at the time of his plea. Because the Petitioner has failed to offer more than a "conculsory allegation[] unsupported by specifics," Blackledge, 431 U.S. at 74, we conclude that the post-conviction court properly denied relief on this ground.

**III. Plea Colloquy.** The Petitioner next claims the trial court failed to conduct a proper plea colloquy in his case by not complying with Rule 11 of the Tennessee Rules of Criminal Procedure and Mackey, 553 S.W.2d at 341-42. He specifically claims that the trial court failed to explain the maximum penalty for the charges against him as required by Rule 11(b)(1)(B), failed to talk to him about whether his plea was voluntary as required by Rule 11(b)(2), and failed to advise him, as required by Mackey, that evidence of the convictions from his guilty pleas could be considered in determining the appropriate punishment for future convictions.

Tennessee Rule of Criminal Procedure 11(b) requires the following, in pertinent part:

(1) Advising and Questioning the Defendant. Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint

- 16 -

counsel--at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self[-]incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offence to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury;

(J) if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea; and

(K) if the defendant pleads guilty or nolo contendere to an offense for which he or she will receive an additional sentence of community supervision for life, the fact that he or she will receive the additional sentence, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the community supervision for life sentence and its consequences.

(2) Insuring That Plea Is Voluntary.- Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement). The court shall also inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney

- 17 -

general and the defendant or the defendant's attorney.

Tenn. R. Crim. P. 11(b).

After reviewing the transcript from the Petitioner's plea submission hearing, we recognize that although the trial court complied with the other requirements in Rule 11(b), it did not specifically inform the Petitioner of the maximum penalty for the aggravated robbery charges as required by Rule 11(b)(1)(B). In <u>Boykin</u>, 395 U.S. at 243-44, the United States Supreme Court held that trial courts must question defendants to ensure that they understand, by entering a guilty plea, that they are waving the following constitutionally-based rights: the privilege against self-incrimination, the right to a jury trial, and the right to confront their accusers. Because "the additional processes for accepting a guilty plea that <u>Mackey</u> and Rule 11 require are not necessarily constitutionally based," "an allegation that a trial court failed to follow either the <u>Mackey</u> procedure or Rule 11 does not necessarily establish a cognizable post-conviction claim because post-conviction relief is only available to remedy an abridgement of a state or federal constitutional right." <u>Garcia v. State</u>, 425 S.W.3d 248, 263 (Tenn. 2013). "Absolute literal compliance with [Rule 11] is not required"; instead, the trial court is only required to "substantially comply with these mandates." <u>Howell</u>, 185 S.W.3d at 331. "A trial court substantially complies with these mandates when it expresses the sense of the substance of the required advice to a defendant who is seeking to plead guilty." <u>Id.</u> "'Where there is substantial compliance the root purpose of the prescribed litany has been served and the guilty plea passes due process scrutiny because it was made voluntarily and understandingly.'" <u>Id.</u> (citation omitted).

In considering the significance of the trial court's omission regarding the mandate in Rule 11(b)(1)(B), we note that the Petitioner acknowledged several times during the post-conviction hearing that he knew at the time he entered his guilty pleas that the sentencing range for his aggravated robbery offenses was twelve to twenty years. In addition, trial counsel testified that he informed the Petitioner that he faced a sentence of twelve to twenty years for each of his aggravated robbery charges. Furthermore, the record makes it clear that the Petitioner received a sentence of twelve years, the minimum sentence in this range, for both of the aggravated robbery offenses. Accordingly, we conclude that the trial court's omission regarding the maximum penalty for the aggravated robbery charges did not result in the Petitioner's entering an unknowing and involuntary plea.

As to the Petitioner's claim that the trial court failed to talk to him about whether his plea was voluntary and not the result of force, threats, or promises as required in Rule 11(b)(2), we conclude that the trial court complied with this subsection of the rule. The transcript from the plea submission hearing shows that the trial court advised the

Petitioner that if it found that the Petitioner had not really agreed to this plea agreement, then it was not going to accept his guilty pleas. The court then stated, "[I]t is my job in this type of situation to determine whether you are voluntarily and intelligently giving up rights upon entering these pleas." When the court asked the Petitioner if he understood the things he had just told him, the Petitioner replied, "Yes, sir." The trial court later asked the Petitioner if he understood that no one could "force [him] to enter these pleas of guilty," and the Petitioner replied, "Yeah." The Petitioner stated that he was waiving all of his rights because he believed it was in his best interests to enter his guilty pleas. Because the trial court complied with the mandate in Rule 11(b)(2), we conclude that the Petitioner is not entitled to relief on this issue.

Finally, the Petitioner contends that the trial court failed to advise him, pursuant to Mackey, that evidence of the convictions from his guilty pleas could be considered in determining the appropriate punishment for future convictions. See Mackey, 553 S.W.2d 337, 341-42. The transcript from the plea submission hearing shows that the trial court told the Petitioner that if he was convicted of any new crimes in the future, then "these convictions as well as all convictions will be used to greatly increase punishment; do you understand that?," and the Petitioner replied, "Yeah." Because the trial court fully complied with this mandate under Mackey, the Petitioner is also not entitled to relief on this ground.

**IV.   Release Eligibility.**   Lastly, the Petitioner contends that his plea was unknowing and involuntary because of confusion regarding the percentage of the sentence that he must serve prior to becoming eligible for release. He maintains that trial counsel and the State asserted that he must serve seventy percent of his effective twelve-year sentence and that although his plea agreement originally stated that his release eligibility was seventy percent, this percentage was "crossed through" and changed to a release eligibility of eighty-five percent. The Petitioner asserts that all of his conversations with trial counsel led him to believe that the he would only be required to serve seventy percent of his twelve-year sentence.

The transcript from the plea submission hearing shows that the trial court referenced Tennessee Code Annotated section 40-35-501(k)(1), specifically informing the Petitioner of the following:

> [T]here shall be no release eligibility for a person committing aggravated robbery on or after July 1, 2010 until the person has severed eighty-five percent of the sentence imposed by the Court, less sentence earned and retained. However, no sentence reduction credit or any other provision of law shall operate to reduce below seventy percent, the percentage of the sentence imposed by the court, such person must serve before becoming

release eligible.

The trial court remarked, "It's my understanding . . . that he's got to serve at least seventy percent of twelve calendar years . . . before he would be subject to even be considered," and trial counsel replied, "Yes." It then asked the Petitioner if he understood what he had just said about his release eligibility, and the Petitioner responded, "Yeah." The court later asked the Petitioner if he had any questions about his guilty plea, and the Petitioner said, "No." The trial court then accepted his guilty pleas and stated that it was sentencing him to "twelve years as a range two offender," which meant that the Petitioner had to serve a "minimum of seventy percent calendar days of twelve years." We note that the Petitioner's plea agreements for these offenses show that although his sentences were originally typed in as "ten (10) years" to serve "at 70%, someone marked through this information and changed it "twelve 12" years "at "85%."

At the post-conviction hearing, the Petitioner testified that because he was under the influence of marijuana at the time of his plea, he did not understand that the State's offer was twelve years with a release eligibility of eighty-five percent. He said that after the first day of trial, the State offered him concurrent twelve-year sentences at seventy percent but never mentioned a release eligibility of eighty-five percent. Although the Petitioner acknowledged that the trial court advised him of Code section 40-35-501(k)(1), which requires a release eligibility of eighty-five percent for those convicted of aggravated robbery, he said the court also stated an individual could "get it down to 70 percent," which led him to believe that "the Court gave [him] a twelve-year sentence at 70 percent." The Petitioner claimed that he did not understand at the time of his plea that his sentences had a release eligibility of eighty-five percent but that this percentage potentially could be reduced by fifteen percent for good time credits, which would only then make him eligible for parole after service of seventy percent of his sentences. However, the Petitioner admitted that he understood, at the time he entered his plea, that he would have to serve at least seventy percent of each sentence before being considered for parole. He also admitted that by pleading guilty, he received concurrent sentences of twelve years, which was the bottom of the sentencing range, for both aggravated robberies.

Trial counsel testified that the changes to the plea agreements were in his handwriting and that although the Petitioner initialed the change from a ten-year sentence to a twelve-year sentence, the Petitioner did not initial the change from seventy percent to eighty-five percent release eligibility. Nevertheless, trial counsel asserted he reviewed the final plea agreement with the Petitioner and explained that the Petitioner would be eligible for a fifteen percent reduction for good behavior, which would allow him to be eligible for parole after serving seventy percent of his sentence. Trial counsel also said he reviewed the potential sentences the Petitioner faced if convicted and informed the

Petitioner that because he was charged with two aggravated robberies, it was possible for him to be sentenced to forty years in prison if the court imposed consecutive sentencing. He also told the Petitioner that he would probably not receive the minimum twelve-year sentence if he was convicted at trial of the aggravated robbery involving Brandon Moss because he was a Range II offender. Trial counsel asserted that both he and the trial court reviewed the final plea agreement containing the changes with the Petitioner before the Petitioner entered his guilty pleas.

We conclude that the record fully supports the post-conviction court's finding that the Petitioner was informed, prior to entering his guilty pleas, that his sentences would have a release eligibility of eighty-five percent. We note that at the time he entered these guilty pleas, the Petitioner had prior experience with the criminal justice system because his three prior felony convictions made him a Range II, multiple offender. The Petitioner was represented by trial counsel, an assistant public defender with substantial experience, and the Petitioner had the opportunity to confer with trial counsel about his alternatives prior to entering his guilty pleas. Both trial counsel and the trial court advised the Petitioner about his charges and the specific penalties to be imposed, including the fact that his sentences had a release eligibility of eighty-five percent. The Petitioner stated at the plea submission hearing that he understood the terms of his plea agreement, that he had no questions for the court, and that he believed it was in his best interests to enter his guilty pleas. We reiterate that a petitioner's representations that his guilty plea is knowing, intelligent, and voluntary create "a formidable barrier in any subsequent collateral proceedings" because these representations "carry a strong presumption of verity[.]" Blackledge, 431 U.S. at 74. In addition, we recognize that the plea agreements in this case disposed of one additional felony charge and enabled the Petitioner to receive concurrent sentences of twelve years, the minimum for his aggravated robbery convictions. Because the Petitioner has failed to prove by clear and convincing evidence that his guilty pleas were involuntary or unknowing, he is not entitled to relief.

## CONCLUSION

Based upon the aforementioned authorities, reasoning, and record as a whole, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE

- 21 -